## ARROWSMITH MFG. CO. v. E. T. GILBERT MFG. CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

### No. 97.

PATENTS (§ 328*)—PATENTABLE INVENTION—INSTEP-SUPPORT.

The Arrowsmith patent, No. 748,553, for an instep-support or arch-prop, claim 3, relating to a nonmetallic covering piece and the fastening thereof to the metal support, is void for lack of patentable invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Western District of New York.

For opinion below, see 158 Fed. 307.

Stephen J. Cox, for appellant.
Albert E. Lynch and Clifford E. Dunn, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. But little need be added to the opinion of the judge of the Circuit Court.

Concededly the field of invention was a narrow one, the patent being for an improvement upon an instep-support covered by a prior patent to Arrowsmith. The third claim sufficiently discloses the nature of the patentee's latest contribution to the art. It is as follows:

"3. In combination with a metallic instep-support or arch-prop, having its body portion curved to fit the under surface of the normal arch of the instep, and having its side portion curved to fit the side surface of the normal arch of the instep of a non-metalic covering piece, moulded to fit the upper surface of the support or prop and secured thereto at points near

the line of junction of the body portion and the side portion, the portions of the covering piece lying against the body portion and against the side portion being free; substantially as described."

The only novel feature is the addition to the old structure of "a non-metallic covering piece, moulded to fit the upper surface of the support or prop and secured thereto at points near the line of junction of the body portion and the side portion." In other words, the alleged invention resides in covering the old support with leather and fastening the cover to the support at the points indicated. Covering metallic devices designed to come in contact with the human body with leather and similar substances was, of course, old at the date of the patent. Indeed, leather had been previously used to cover metal supports for the instep arch.

Davies, in his English patent of 1898, says:

"The entire plate, together with the springs, is inclosed in a case of leather or other flexible material, fitted and stitched upon them to prevent the metal from coming in contact with the foot, whilst leaving the plate sufficiently flexible in every direction."

In 1897 Holland described a leather sole piece with strips of tempered steel on the under side thereof to support the instep arch, the parts being fastened together by rivets at points similar to those of the patent in suit, and otherwise left free.

In his English patent of 1885 Holland describes his invention as follows:

"A band of flexible steel formed to the proper and natural shape of the inside waist of the human foot and fastened at each end by rivets, or otherwise, to a sole of leather or any other material either on the under or upper surface of the sole. The sole to which the band of steel is fastened may be a separate sole to be worn inside a boot or shoe or it may be the insole of a boot or shoe."

So that the controversy is limited to the single inquiry, Did it involve invention to attach the two parts together at the points shown in the drawings of the patent?

The location of the fastenings is described as follows:

"The covering piece is secured to the instep-support or arch-prop by rivets or other fastening devices 6 at two points only, one near the forward end of the body portion 1 and the other near the heel end."

In the claims the fastenings are to be placed "near the line of junction of the body portion and side portion." The proof leaves the exact location of this line in a somewhat uncertain and nebulous condition. It is unnecessary to attempt to reconcile the differences of opinion expressed by the experts as we are convinced that it did not require an exercise of the inventive faculty to locate the rivets anywhere in the debated territory.

Having in view the objects to be attained, which were apparent to all, it would seem that the fastening was made not only in the natural and obvious way, but, indeed, in the only way possible if the rivets which hold the reinforcing plate to the body portion are to be utilized.

The theory that the riveting line was selected because there is no bending of the metal with resulting crystallization at the points in question, is too theoretical and speculative for practical application.

We agree with the Circuit Court in thinking that the claims in question are void for lack of invention.

The decree is affirmed with costs.